```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                              Case No. 19-cr-00497
 5      -vs-

 6  NACHMAN HELBRANS,

 7                        Defendant.

 8  ------------------------------------x

 9                              United States Courthouse
                                White Plains, New York
10
                                February 17, 2021
11                              1:20 p.m.

12
    B e f o r e:
13
                                HONORABLE NELSON S. ROMAN
14
                                District Judge
15

16  A P P E A R A N C E S:

17  AUDREY STRAUSS
         United States Attorney for the
18       Southern District of New York
    SAMUEL S. ADELSBERG
19  JAMES A. LIGTENBERG
         Assistant United States Attorneys
20

21  KOFFSKY & FELSEN, LLC
    BRUCE D. KOFFSKY
22       Attorney for Defendant

23  PETER J. SCHAFFER
         Attorney for Defendant
24
    ALSO PRESENT:  Ruth Kohn - Interpreter (Yiddish)
25
```

 1          THE DEPUTY CLERK:  Docket Number 19-cr-497, defendant

 2   one.  United States of America versus Nachman Helbrans.

 3          Will counsel please state their appearance for the

 4   record, beginning with the government?

 5          MR. ADELSBERG:  Good afternoon, Your Honor.  Sam

 6   Adelsberg on behalf of the United States.

 7          MR. LIGTENBERG:  Good afternoon, Your Honor.  Jim

 8   Ligtenberg for the United States.

 9          THE COURT:  Good afternoon.

10          MR. KOFFSY:  Good afternoon, Your Honor.  Attorney

11   Bruce Koffsky and Attorney Peter Schaffer.  We are appointed

12   counsel for Mr. Nachman Helbrans.  Thank you for having us here,

13   Your Honor, and we hope you are well.

14          THE COURT:  Thank you, counselor.  Good afternoon to

15   everyone.  This is a proceeding in the matter of the United

16   States versus Nachman Helbrans, 19-cr-497, defendant number one,

17   and this matter is being held today for purposes of conducting a

18   Faretta hearing.  This is an in-person proceeding.  I'm going to

19   try and move through this as quickly as possible.

20          At this moment, I am going to ask my courtroom deputy

21   to place Mr. Nachman under oath, and then we will begin.

22   NACHMAN HELBRANS, called as a witness, having been first duly

23   affirmed, was examined and testified as follows:

24          THE DEFENDANT:  Yes.

25          THE DEPUTY CLERK:  Thank you.  Your Honor, the

1   defendant has affirmed.

2            THE COURT:  All right.  Before we begin, I want the

3   record to reflect that we have a Yiddish interpreter in the

4   courtroom and available, and if you can just place your name on

5   the record.

6            THE INTERPRETER:  Ruth Kohn.  R-U-T-H.  Yiddish

7   interpreter.

8            THE COURT:  Okay.  Good afternoon as well.  The last

9   name is K-O-H-N.

10            All right.  The record should reflect that Mr. Nachman

11  Helbrans has been placed under oath.

12            Mr. Nachman?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  You have the right to counsel.  That is,

15  you have a right to have a lawyer represent you in these

16  proceedings.  You may waive your right to counsel and represent

17  yourself but only if you meet certain requirements.  In

18  particular, if you want to represent yourself, you must make a

19  request to do so that is:  One, clear and unequivocal and not

20  for purposes of delay or manipulation; two, it must be knowing,

21  intelligent and voluntary; and three, it must be timely.

22            Do you understand that?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  First, if you want to represent yourself,

25  you must say so clearly and unequivocally.  If you do not make

1  it clear that you want to represent yourself, then you will be

2  represented by a lawyer.  There is, in other words, a

3  presumption that you will be represented by a lawyer.  The only

4  way to overcome that presumption is if you express your contrary

5  desire clearly.  Do you understand this?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Second, your request for self-

8  representation must be knowing, intelligent and voluntary.  In

9  other words, before you decide what you want to do, you must

10 understand the consequences of your decision.  I want you to

11 know what is at stake here.  Although you need not be a lawyer

12 or have the skill and experience of a lawyer, in order to decide

13 to represent yourself, you must be aware of the dangers and

14 disadvantages of proceeding without one.

15           I will now try to explain to you the difficulties and

16 dangers of self-representation.  If I say something that you do

17 not understand, please let me know, and I will try to explain

18 it.  It is important that you understand the choice you are

19 going to be making.

20           You are facing four very serious charges, including

21 one count of conspiracy to commit international parental

22 kidnapping, unlawful use of a means of identification, and enter

23 by false pretenses the secured area of an airport in violation

24 of 18 U.S.C. Section 371; and three counts of international

25 parental kidnapping in violation of 18 U.S.C. Section 1204.

1          The maximum term of imprisonment for all four counts

2    is 14 years' imprisonment.  In addition, the government has the

3    ability to, and often does, add new charges before the case goes

4    to trial.  These charges may carry more severe penalties than

5    the charges you are now facing.  In the event that I determine

6    today that you can represent yourself, in the event that the

7    government adds some new charges at some point before trial, I

8    may hold another hearing to determine whether you still want to

9    represent yourself in the proceeding given the new charges, but

10   I may not.  Do you understand this?

11          THE DEFENDANT:  I understand, Your Honor.  I have some

12   reservation, but I understand.

13          THE COURT:  Okay.  Let me continue.  Pretrial, trial

14   and post trial proceedings can be very complex.  They involve

15   legal work and require intimate familiarity with the Federal

16   Rules of Criminal Procedure and the Federal Rules of Evidence.

17   They are usually better done by a lawyer, especially a lawyer

18   specializing in criminal defense, than a lay person because the

19   lawyer is specially trained to do them and has special knowledge

20   and experience with the substantive and procedural rules of law

21   and of this court.  Obviously, there will be serious

22   consequences if your defense is mishandled here.

23          It's almost always a good idea for a defendant in a

24   criminal case to have a lawyer.  Nonetheless, the choice of

25   whether to continue with your lawyer or to proceed pro se,

1    meaning self-represented, is entirely yours; so long as you make

2    it in a knowing, intelligent and voluntary fashion with a proper

3    understanding of what is at stake.  I am only trying to ensure

4    that you make an informed decision.

5          Thirdly and finally, timeliness.  If you make your

6    choice today, or within the next day or so, it will be timely

7    because we are still in the pretrial phase of the case.  But I

8    warn you for the future that you do not have a right to

9    manipulate this Court.  You should think hard before making a

10   decision because it will have ongoing significance for you.  For

11   example, if you choose to have a lawyer and then later ask to

12   represent yourself, and if I conclude that you are acting in bad

13   faith and trying to delay, I will deny your request.

14         On the other hand, if you choose to represent

15   yourself, you do not have an absolute right to withdraw your

16   request for self-representation and have a subsequent attorney

17   appointed at a later point.

18         This is an important moment in the case, and you have

19   an important decision to make.  Do you understand this?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  All right.  If you decide to represent

22   yourself, I will appoint what is called standby counsel to

23   assist you.  You will still largely control the presentation of

24   your case, but you will have a lawyer to explain to you the

25   details of the courtroom protocol and the rules of evidence and

1    procedure.  The standby lawyer will be there to help you to

2    investigate the facts and law, identify possible defenses, and

3    suggest appropriate motions to file.  Standby counsel is there

4    to assist, but will not be permitted to interfere with your

5    control of the case with a few exceptions.

6            You do not have a right to reject the standby lawyer,

7    and as I say, I have decided to appoint one for you if you

8    decide to proceed pro se.  So if you represent yourself, you

9    will have standby counsel.  Do you understand this?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Even with standby counsel, however, you

12   will still largely control the presentation of your motions to

13   me and your case to the jury.  For example, you will have a

14   right to control the organization and content of your defense,

15   to make motions, to argue points of law, and to address the

16   Court.  Standby counsel will not interfere with your control of

17   the case.  You ultimately retain final authority over the case.

18   Of course, you will have to do all of these things within the

19   limits set by the rules of courtroom procedure, evidence and

20   decorum.  This is not to say, however, that standby counsel is

21   prohibited from acting at all.  He or she may assist you to

22   ensure your compliance with basic rules of courtroom protocol

23   and procedure.

24           If you do not waive your right to counsel, and you are

25   represented by a lawyer, then the lawyer will conduct your

1    defense.

2         To sum up then, you have a right to be represented by

3    a lawyer, and you have a right to represent yourself.  If you

4    are represented by a lawyer, then it is the lawyer, and not you,

5    who will conduct the defense.  Conversely, if you represent

6    yourself, you will be able to perform the lawyer's court

7    functions, but you will not necessarily be allowed to direct

8    special appearances by counsel when it is convenient for you.

9    Standby counsel will be available to help you overcome routine

10   procedural or evidentiary obstacles and matters of courtroom

11   protocol, again, without undermining your actual control over

12   the presentation of your defense.

13        You do not, however, have a right to hybrid

14   representation where you and a lawyer act as co-counsel in the

15   conduct of your defense.  If you elect to place standby counsel

16   in an active role, or if you do not object when that happens,

17   you could lose your right to represent yourself.  At a minimum,

18   if you do that, any further participation by the lawyer will be

19   presumed to be with your permission, and you will not be able to

20   complain about it later.  Do you understand this?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  If you represent yourself, I am not going

23   to treat you any differently than any other defendant, and the

24   Court of Appeals is not going to treat your case any

25   differently.  In other words, if you make the decision to

1    represent yourself, and you make mistakes, you are not going to

2    be able to come back and complain about those mistakes to the

3    Court of Appeals.  You will accept the responsibility for your

4    own mistakes, and there will not be a basis for you to appeal

5    your conviction.  Do you understand that?  That will not be a

6    basis for you to appeal your conviction.

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  There are some other things you should

9    know.  If you do choose to represent yourself, you must

10   understand that does not give you license to abuse the dignity

11   of the courtroom or license to violate the relevant rules of

12   procedural and substantive law.  You must always abide by

13   courtroom protocol and maintain proper decorum, and you may not

14   improperly disrupt the proceedings.  You must, for example,

15   follow the rules of evidence.  You must obey my rulings even if

16   you disagree with them, knowing that you have preserved your

17   objection for review by the appellate court.

18             If you deliberately engage in serious and

19   obstructionist misconduct, I will terminate your self-

20   representation.  If I am forced to do so, then standby counsel

21   will take over the defense for you.  Do you understand this?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  If you have any questions, I will be happy

24   to answer them at this time.  In a moment I will ask you

25   questions so that I can learn a little bit more about your

1  background, education, job experience, and familiarity with the

2  American legal system in order to determine whether your

3  decision today is made knowingly, intelligently and voluntarily.

4  I will also inquire about any recent or regular use of alcohol,

5  narcotics or prescription medications to assure myself that your

6  judgment today is not clouded.  I will then hear your decision

7  and make my own determination and findings about whether you

8  have knowingly, intelligently and voluntarily and unequivocally

9  waived your right to counsel.

10          Do you understand this?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Are you ready to proceed?

13          THE DEFENDANT:  Yes.  I have one question, one

14  reservation and one question for Your Honor.

15          MR. KOFFSY:  Your Honor, may first talk to my client

16  privately just to find out what the question is?

17          THE COURT:  Yes.

18          (Pause)

19          MR. KOFFSY:  Your Honor, if I may speak for my client?

20  Should I stand, Your Honor?

21          THE COURT:  No.

22          MR. KOFFSY:  Your Honor made certain references in its

23  initial instructions to the defendant with regard to maximum

24  sentences, guidelines -- I think guidelines -- but certainly

25  maximum sentences, and the potential that the government might

1    add charges between now and the resolution of the matter.

2           THE COURT:  Before -- between now and the start of

3    trial.

4           MR. KOFFSY:  What I am indicating is that the Court

5    made -- the Court described a maximum jail sentence and the

6    ability of the government to charge the defendant with

7    additional charges.

8           By going forward with this Faretta hearing, the

9    defendant wants the Court to know that he is not waiving any

10   claim that the Court indicated an incorrect maximum or that he

11   is waiving any claim as to arguing that additional charges that

12   are brought against him by the government were wrongly brought.

13          So what I just want to indicate to the Court is that

14   my client, by going forward today with regard to the Faretta

15   hearing, isn't waiving any other rights that he might have here.

16          THE COURT:  Anything the government would like to

17   respond to?  I know how tall you are.  You can remain seated;

18   makes things run a lot smoother.

19          MR. ADELSBERG:  Your Honor, I think the Court was

20   fairly clear in making the point it made, which is that there

21   might be additional charges in the future, and that the

22   defendant's right to have an additional hearing, additional

23   Faretta hearing at that point is not guaranteed; that he is at

24   an important point in the case, and he is facing an important

25   decision, and it doesn't say that he can sort of reverse time

1   if the government does proceed to add charges at some point.

2           THE COURT:  Mr. Helbrans, I don't control the

3   government and what charges they choose to bring against you.

4   All right.  The purpose of this hearing, and the purpose of the

5   information or the statement that I made is so that you can be

6   informed and have as much information as possible available to

7   you so that if and when you decide that you want to represent

8   yourself, you are making an informed decision.  All right?

9           As I said, I don't represent the government.  My

10  understanding is that this -- this case involves a lot of

11  documents, potentially quite a number of witnesses, and so in

12  the process of them building a case against you on the current

13  indictment, it may very well be -- I don't know -- that they

14  could obtain such information that may warrant additional

15  charges against you, but that is something that the government

16  has to decide and has control over; not something that the Court

17  has control over.

18          All right?  So it may very well be possible that

19  somewhere down the line prior to trial they can reindict you on

20  additional charges; and depending on what those charges are, the

21  penalties that you may face may also be much greater than those

22  that I articulated previously.  I don't know.  But you do --

23  that is, rather, a possibility.  So I indicated as much on the

24  record so that if you decide to represent yourself, again, you

25  are making a knowing, intelligent and voluntary decision.  Do

1   you understand that?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Okay.  So let us begin.  All right.

4            What is your primary language?

5            THE DEFENDANT:  Yiddish and English, both equally.

6            THE COURT:  Okay.  Do you understand, speak and write

7   English?

8            THE DEFENDANT:  Your Honor, I am speaking.  I can read

9   it, but writing, it's very hard for me, and writing is not

10  complete without a computer, at least.

11           THE COURT:  Can I ask you:  Did you learn English at

12  home or at a school?

13           THE DEFENDANT:  I only get English like by air.  I

14  newer, ever an official course of English.  I was born in

15  Israel, and I came to the United States about age of 14 or so.

16  I catch the English, and I much use it if necessary.  I learn to

17  speak and do it, to read and to write, on the computer at least.

18           THE COURT:  Okay.  Are you familiar with the United

19  States Constitution?

20           THE DEFENDANT:  Yes, Your Honor.  I definitely

21  familiar.  Not professional, but I read it.  I heard much about

22  it.

23           THE COURT:  Okay.  And are you familiar with the Sixth

24  Amendment to the U.S. Constitution?

25           THE DEFENDANT:  Yes, Your Honor.

1            THE COURT:  Are you familiar or aware that under the

2   Sixth Amendment you have an absolute right to counsel?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  All right.  Are you aware that you also

5   have under the Sixth Amendment a right to represent yourself?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  While you have the right to represent

8   yourself, the Court must decide for itself whether your waiver

9   of your right to counsel is knowing, intelligent, and voluntary.

10  Do you understand this?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Okay.  I want you to -- I know I have

13  asked you this question before, but can you please state your

14  full name again for the record?

15           THE DEFENDANT:  Nachman Helbrans, N-A-C-H-M-A-N, and I

16  have another name, Simon, S-I-M-O-N.  Helbrans is

17  H-E-L-B-R-A-N-S.

18           THE COURT:  Okay.  Describe for me your education.

19           THE DEFENDANT:  I live within the Orthodox and Hasidic

20  communities, and I get the schooling.

21           THE COURT:  I am sorry.  Can you say that again?  And

22  just say it slowly because I want to make sure that it's

23  properly memorialized and recorded.

24           THE DEFENDANT:  Yes, Your Honor.  I learn it on the

25  Hasidic communities, I go into the religious school at age of

1    three, having to learn letters, Hebrew letters, and then to

2    reading everything on Hebrew and Yiddish; and I taught, you

3    know, the Torah, and then -- and this is going letter by letter

4    from Torah to Mishnayos to Talmud and such onto the Yeshiva

5    until the age of 18, and now I go, as the custom, you have to

6    study and study always --

7              MR. KOFFSY:  Slow down.

8              THE DEFENDANT:  -- the religious -- religious

9    subjects.

10             I take my own free time to study to read some English,

11   and then if it's necessary, I will use it.  If not, I don't use

12   it.  I became more familiar with it, never taking an official

13   course in the language.  This is why I sometimes mistake on

14   pronunciation of something that I only read about, or with

15   spelling something that I only listen, and I never know it,

16   never catch on to spell it, but I communicate fine in every

17   aspect of life, on all aspects.

18             THE COURT:  All right.  So you mentioned that you

19   basically learned English on your own; is that what you are

20   saying?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Okay.  You read some English?

23             THE DEFENDANT:  I reading it pretty well.  I even

24   sometimes a little bit level of reading that it's even more

25   common, especially on legal subjects.  I could have sometimes

1  one particular word or one particular sentence, very rarely, but

2  it could happen sometimes.

3          THE COURT:  All right.  So can you read a book and

4  understand its contents in English?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Okay.  Can you describe for me your work

7  experience?

8          THE DEFENDANT:  Well, when I -- after I was married at

9  the age of 19.  So gradually, I was more and more involved in my

10  father's community.  It's called Lev Tahor.  It was the U.S. and

11  in Israel, but when I became 19, it was in the U.S. and in

12  Canada.  So I was involved as a community organizer, something

13  like that, and then -- and then I became part of the

14  administration; and after my father passed away on 2017, make me

15  the official rabbi of the community, and so now I am called

16  Hanhala, and this is my work.

17          THE COURT:  When you say "administration," what do you

18  mean by that?  What were your duties and responsibilities?  I

19  mean, what it is -- you are just glossing over your work.  You

20  are not telling me what you did.

21          THE DEFENDANT:  I will tell the truth to Your Honor.

22  I have not always have a definite name or part because we are a

23  small community, and we use the word "administration" on the

24  Yiddish, "Hanhala," so it's means assist.  And so from time to

25  time, they were needing assistance.  Sometimes I was a teacher

1   for the -- for boys 14 and 15, et cetera, and sometimes I work

2   with my father's book.  I was using a computer.  I would have to

3   be in printing and editing for him books, and sometimes I help

4   with decision-making and helping, and especially when the

5   community was about to move from Quebec to Ontario, from Ontario

6   to Guatemala.

7            And then this is what's more or less my work.  It

8   could sometimes be undefinite [sic], the exact work.  For

9   example, if my father needs me to clean the books, I clean the

10  books.  Then I finish the book.  I was involved on teaching and

11  something like that.

12           THE COURT:  I'm sorry.  When you say you were involved

13  in the books, are you saying that you were involved in drafting

14  the book?  Is this a religious book?  Is this -- what kind of a

15  book is this?

16           THE DEFENDANT:  It's all religious books, yes.  It's

17  all about religious books.

18           THE COURT:  Okay.

19           THE DEFENDANT:  My father make many books, and I

20  was --

21           THE COURT:  You said he makes many books.  Are you

22  saying that he wrote books?

23           THE DEFENDANT:  Yes.  He was writing books, yes.

24           THE COURT:  All right.  Did you help in the drafting

25  of those books?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  Did you help also -- would you

3  say that you helped in the editing of those books as well?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Were those books --

6          (Pause)

7          THE COURT:  Yes.  All right.  Let's go back on the

8  record.  All right.

9          So you were describing your work experience.  Okay.

10 You said you started working at the age of about 19?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  How old are you now?

13         THE DEFENDANT:  I am -- tonight I am 39.  18 February.

14 I born 18 February 1982.

15         THE COURT:  All right.  And you are now the leader

16 of --

17         MR. KOFFSY:  Your Honor, I'm going to just ask the

18 Court.  The government may ascribe a leadership role to this

19 defendant, and the fact that the Court is asking --

20         THE COURT:  Because they need to know what his work

21 experience is.  This is relevant to --

22         MR. KOFFSY:  I understand.  I'm just asking --

23         THE COURT:  -- to the inquiry.

24         MR. KOFFSY:  -- the Court to be mindful of asking

25 questions that track part of the government's case in an effort

1    to find out whether the defendant is involved.

2              THE COURT:  Okay.

3              MR. KOFFSY:  I'm just asking the Court.  I understand

4    that at some point Mr. Helbrans may be his own counsel, and

5    what's good for the goose is good for the gander, but I'm

6    suggesting that right now the Court be mindful of questions that

7    it's asking the defendant that might in some way track the

8    government's charges.

9              THE COURT:  Okay.  That wasn't my intention.  All

10   right.

11             Mr. Helbrans, have you ever been involved in a legal

12   proceeding --

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  -- either as someone who brought a legal

15   proceeding against another individual or did someone ever bring

16   a legal proceeding against you prior to -- separate and apart

17   from this proceeding?

18             THE DEFENDANT:  It was --

19             THE COURT:  No, no, no.  The question is either a yes

20   or no.

21             THE DEFENDANT:  I was part of a proceeding, from a

22   legal proceedings, yes.

23             THE COURT:  Okay.  Did you ever represent yourself in

24   that prior proceeding or prior proceedings?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  You represented yourself?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Was that -- was that a civil dispute?

4          THE DEFENDANT:  It was in Canada, and --

5          THE COURT:  Listen to me.  Was it a civil dispute?

6          THE DEFENDANT:  It was civil.  Yes.

7          THE COURT:  Okay.  So that matter, did it involve a

8  civil dispute here in the United States?

9          THE DEFENDANT:  No.

10          THE COURT:  Do you understand the nature and purpose

11  of this proceeding?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Are you aware that this is a criminal

14  proceeding?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Are you feeling well today?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Have you recently taken any medication or

19  have you consumed any alcohol?

20          THE DEFENDANT:  I take vitamins, not any medication

21  that could affect me and not alcohol and so on.

22          THE COURT:  Have you ever received any treatment for

23  alcohol or drug addiction or for any type of mental illness?

24          THE DEFENDANT:  No, Your Honor.  I have one, two

25  incident of involvement on the prison and argumented [sic].  And

1   it did not resulted in any, you know, prescribed medication for

2   mental illness.

3           THE COURT:  And they gave Augmentin?  Is that what you

4   said?

5           THE DEFENDANT:  I was -- because I was two times

6   argumented [sic] with the officers, they took me to the hospital

7   on two occasions --

8           THE COURT:  Okay.

9           THE DEFENDANT:  -- and it turned out the doctors never

10  prescribed medication.

11          THE COURT:  Okay.  I'm now going to advise you

12  specifically about the charges for which you have been indicted

13  and the possible penalties for those charges.

14          You were indicted by a grand jury with one count of

15  conspiracy to commit international parental kidnapping, unlawful

16  use of means of identification, and entry by false pretense a

17  secure area of an airport in violation of 18 U.S.C. Section 371.

18  This count carries a maximum term of imprisonment of five years,

19  a maximum term of supervised release of three years, a maximum

20  fine of $250,000 or twice the gross pecuniary gain or loss in

21  the offense and a hundred dollar special assessment.

22          You were further indicted by a grand jury with three

23  counts of international parental kidnapping in violation of 18

24  U.S.C. Section 1204.  Each of those counts carries a maximum

25  term of three years' imprisonment, a maximum term of supervised

1  release of one year, a maximum fine of $250,000, or twice the

2  gross pecuniary gain or loss in the offense, and a hundred

3  dollar mandatory assessment.  The maximum term of imprisonment

4  for all four counts is 14 years' imprisonment.

5          Do you understand the charges for which you have been

6  indicted and the maximum penalties for those charges?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Can you tell me what I just said with

9  regards to the maximum possible penalty of incarceration that

10 you may face?

11         THE DEFENDANT:  Your Honor said that the maximum if

12 you count five with the conspiracy and three times three for

13 each count of international parental abduction, it's maximum of

14 14 years.

15         THE COURT:  All right.  Do you understand that your

16 sentence will be in part governed by the United States

17 sentencing guidelines?  Are you aware of that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Have you discussed the sentencing

20 guidelines with your attorney?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Are you aware that the -- that under the

23 current state of the law, the sentencing guidelines are

24 advisory; they are not binding on the Court?  Do you understand

25 that?

021721.1

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you understand what that means?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Meaning it provides a guide for the Court,

5  but I do not have to follow them.

6          THE DEFENDANT:  Yes, Your Honor.  I believe the *Booker*

7  case.

8          THE COURT:  If you choose to represent yourself, you

9  must stand by yourself.  The Court, meaning I, cannot advise you

10  how to present your case, nor can it help you with your case.

11  Do you understand this?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  So understand this, that -- let's say you

14  were to represent yourself, and you were to go to trial, if you

15  were to ask a question in an improper fashion, and there were an

16  objection made by the government attorney, and I was to rule in

17  favor of the government and say, objection sustained, improper

18  question, all right, you would then be responsible for

19  rephrasing the question in a manner that is acceptable under the

20  Rules of Evidence and the Rules of Civil Procedure.  Do you

21  understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  I would not be able to rephrase the

24  question for you or reformulate the question for you.  You would

25  have to do that on your own.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand this?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you understand how the self-

5  representation may conflict with your Fifth Amendment right to

6  remain silent because you may have to speak in the course of

7  representing yourself?  Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  I'm going to go over this one more time.

10  All right.  Under the Fifth Amendment, a defendant has a

11  constitutional right to remain silent.  Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  However, because you are choosing or may

14  choose to self-represent yourself, meaning like not to have the

15  benefit of an attorney represent you, all right, because you

16  would be stepping into that role, an attorney's shoes, all

17  right, you may make statements that may be deemed a waiver of

18  your Fifth Amendment right to remain silent.  You may say things

19  that could conceivably be held against you.  Do you understand

20  this?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Are you familiar with the Federal Rules of

23  Evidence?

24          THE DEFENDANT:  Not familiar like a lawyer, but I read

25  enough about it, and I would continue to read and follow it.

1              THE COURT:  Are you familiar with the Federal Rules of

2    Criminal Procedure?

3              THE DEFENDANT:  The same, Your Honor.  I know some

4    that I read, and I will continue to read.

5              THE COURT:  I'm going to ask you a couple of questions

6    about it because you keep saying you are not familiar like a

7    lawyer, but that you read.  Are you aware that lawyers, all

8    right, in addition to having finished college, most lawyers, I

9    would say like 95 percent, maybe 98 percent of lawyers, all

10   right, not only do they go to college for four years, but

11   traditionally, they go to law school for three years.  Right?

12   And they must pass the requirements of their law school.  All

13   right?

14              Then in addition to that, in order to be licensed to

15   practice in the state of New York, or in most jurisdictions,

16   right, they have to take what's called a bar exam.  It's a big

17   exam, and they have to pass that exam.  Do you understand that?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  And in order for them to represent most

20   defendants, they typically have to have some experience or at

21   least it's advisable for them to have prior experience in

22   representing a criminal defendant.  Do you understand that?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  Mr. Koffsky, how many years' experience do

25   you have as a criminal defense attorney?

```
 1              MR. KOFFSY:  My goodness, 35, 35 years' experience
 2   representing people, Your Honor.
 3              THE COURT:  Thank you, Mr. Koffsky.
 4              MR. KOFFSY:  You're welcome.
 5              THE COURT:  Mr. Helbrans, an attorney may be better
 6   able to deal with issues relating to trial, post trial motions,
 7   sentencing, appeal and other matters.  Do you understand this?
 8              THE DEFENDANT:  Yes, Your Honor.
 9              THE COURT:  Do you understand that if you choose to
10   represent yourself, you do not have an absolute right to request
11   that counsel be appointed after you make that decision?
12              THE DEFENDANT:  Yes, Your Honor.
13              THE COURT:  Do you understand that if you choose to
14   represent yourself, some or all of your co-defendants may still
15   be represented by counsel as the case proceeds?
16              THE DEFENDANT:  Yes, Your Honor.
17              THE COURT:  Do you understand that just because some
18   or all of your co-defendants may be represented -- may be
19   seeking to represent themselves does not mean that you have to
20   seek self-representation as well?  Do you understand what I just
21   said?
22              THE DEFENDANT:  Yes, I understand.
23              THE COURT:  Meaning just because they are seeking to
24   represent themselves, right, they are making individual
25   decisions, all right, on what they believe to be beneficial to
```

1    them, and just because they are seeking self-representation,

2    doesn't mean that you have to seek self-representation.  Do you

3    understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Do you understand that should I determine

6    that you are making a knowing, intelligent and voluntary

7    decision to represent yourself, that I am going to appoint a

8    lawyer to act as standby counsel for you.  Do you understand

9    that?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  You must be aware of this, and I want you

12   to make sure that you understand this.  Do you understand that

13   standby counsel cannot advocate for you?

14             THE DEFENDANT:  Yes, Your Honor.  I understand that.

15             THE COURT:  Do you understand that an experienced

16   criminal defense attorney is almost always more qualified to

17   conduct a defendant's legal defense than is the defendant

18   himself?  Do you understand that?

19             THE DEFENDANT:  Yes.  Absolutely, I understand.

20             THE COURT:  I want to make sure that you heard what

21   Mr. Koffsky said.  He indicated that he has 35 years of legal

22   experience representing defendants in criminal cases.  Do you

23   understand that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Do you understand that the government can

1  return to the grand jury prior to trial to seek additional

2  charges against you, including charges with more severe

3  penalties than the charges you are currently facing, and that an

4  attorney with years of legal experience may be better able to

5  deal with issues relating to those new charges?  Do you

6  understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Do you also understand that if there are

9  new charges against you, that if the government were to bring

10 new charges against you, all right, that will not be a basis for

11 delaying the proceedings? meaning the proceeding may move at the

12 same pace that it is currently moving.  Do you understand that?

13         THE DEFENDANT:  I understand, Your Honor, but may I

14 make a reservation?

15         THE COURT:  No, no.  I want you to understand that

16 there may be a basis for bringing motions if there are new

17 charges, all right, but if you are representing yourself, all

18 right, not represented by an attorney, then any motions that may

19 be appropriate would have to be filed in the timely fashion.  Do

20 you understand that?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  All right.  Do you understand that if you

23 represent yourself and make mistakes, you would not be able to

24 use those mistakes as a basis for an appeal of your conviction

25 or sentence?  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  I'm going to ask you this

3  question:  All right.  Do you understand that if you represent

4  yourself and make mistakes, you will not be able to use those

5  mistakes as a basis for an appeal of a conviction or sentence?

6  Do you now waive any claims of ineffective assistance of

7  counsel?

8          THE DEFENDANT:  Yes, Your Honor.  Yes.

9          THE COURT:  In light of the penalties you may suffer

10  if you are found guilty, in light of all the difficulties of

11  representing yourself, do you still want to represent yourself

12  and give up your right to be represented by counsel?

13          THE DEFENDANT:  Yes, Your Honor.  Absolutely.

14          THE COURT:  You want to represent yourself?  You want

15  to give up your right to be represented by a legally-trained and

16  experienced counsel?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Are you making this waiver voluntarily?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Has anyone made any threats to you in

21  order to get you to waive this right?

22          THE DEFENDANT:  No.

23          THE COURT:  Has anyone made any inducements or other

24  promises to get you to waive this right?

25          THE DEFENDANT:  No one.

1          THE COURT:  I wish to warn you that representing

2    yourself at trial is unwise, and that in the Court's view, you

3    will be far better represented by an experienced criminal

4    defense attorney.  Do you understand this?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Is there anything that the government

7    would like the Court to inquire at this time?

8          MR. ADELSBERG:  No, Your Honor.

9          THE COURT:  Mr. Helbrans, do you have any questions

10   for the Court in this regard, with regards to your request to

11   represent yourself in this matter?

12         THE DEFENDANT:  Yes, Your Honor.  I will like

13   assistance advance how to file motions; how to obtain from the

14   government.  I want everything that I filed.

15         THE COURT:  You're going to -- understand this:  If I

16   grant your application to represent yourself, you will have

17   standby counsel.

18         THE DEFENDANT:  Yes.

19         THE COURT:  All they can do is provide you

20   information, all right, tell you what the law states.  All

21   right.  You can ask them advice, but ultimately, ultimately,

22   they are not the ones making the decision.  The decision will be

23   yours.  You cannot later say that you relied on the advice of

24   standby counsel in making your decision, and you cannot use that

25   as a basis for an appeal.  Every decision you make, any motion

1  that you subsequently file in your capacity as your own attorney

2  will be your decision.  It will be your making, and you cannot

3  later say that you were given misinformation by standby counsel

4  because they are not there in their capacity as your attorney.

5  They can only provide you with information, advice, and

6  ultimately, it is your decision, and your decision alone.  So

7  you cannot later on -- and I'm emphasizing this -- you cannot

8  later come back to the Court and say or make a claim of

9  ineffective assistance of counsel because you are the one that

10  are representing yourself.  You are the one that is standing in

11  the shoes of counsel.  Do you understand that?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And you cannot later say, Judge, I had no

14  experience in what I was doing; I had no legal training; I did

15  not have the benefit of 35 years of legal experience.  You

16  cannot say that.  And I should have listened to my prior

17  attorney.  You cannot say that.  And that will not be a basis

18  for an appeal because you are making an affirmative and an

19  intelligent, voluntary and knowing decision to represent

20  yourself.  Do you understand that?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Any mistakes that are made will be your

23  own, not the mistake of standby counsel, because it is you,

24  Mr. Helbrans, that is making the decision on how to direct the

25  defense of your case.  Do you understand that?

```
 1              THE DEFENDANT:  Yes, Your Honor.

 2              THE COURT:  Do you still wish to -- despite everything

 3    that I have told you, despite knowing that Mr. Koffsky has

 4    35 years of legal experience, went to law school, passed the bar

 5    exam, is licensed to practice law, all right, and has done

 6    many -- not a few -- but many criminal trials, do you still wish

 7    to represent yourself in this matter?

 8              THE DEFENDANT:  Yes, Your Honor.

 9              THE COURT:  Anything further from the parties?

10              MR. ADELSBERG:  I don't have anything.

11              MR. KOFFSY:  Nothing from Mr. Helbrans, Your Honor.

12              THE COURT:  All right.  I am going to reserve

13    decision.

14              MR. KOFFSY:  If I may just ask one question, Your

15    Honor?  If the Court does grant Mr. Helbrans's request to

16    proceed as counsel, is the Court going to appoint new standby

17    counsel or would the Court consider using Attorney Schaffer and

18    I in place as his standby counsel?

19              THE COURT:  I will keep you as standby counsel,

20    Mr. Koffsky.

21              MR. KOFFSY:  Thank you, Your Honor.

22              THE COURT:  My decision -- and I think I pretty much

23    indicated, and I meant it, if I do determine that Mr. Helbrans

24    is making a knowing -- a voluntary, knowing and intelligent

25    decision to represent himself, you would serve as standby
```

 1  counsel.

 2          MR. KOFFSY:  Yes, Your Honor.

 3          THE COURT:  All right.  If there is nothing further, I

 4  will reserve decision.  All right.  I'm not sure where we are

 5  with this, but with respect to Speedy Trial Act and exclusion of

 6  time, but I do know that we do have motions pending, so just so

 7  that the record is clear, the time is excluded until such time

 8  as the Court issues the decision and we have our next

 9  conference.  I just wanted to make sure the record was complete.

10          If there is nothing further, Gina, we are in recess.

11          THE DEPUTY CLERK:  Yes, Your Honor.  Court in recess.

12          MR. ADELSBERG:  Thank you, Your Honor.

13          (Time noted:  2:18 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25