```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  UNITED STATES OF AMERICA,
 4
                                        19 CR 497-4 (NSR)
 5      -vs-
                                        SENTENCING
 6
    JACOB ROSNER,
 7
                            Defendant.
 8  ------------------------------------x
 9                                  United States Courthouse
                                    White Plains, New York
10
                                    Tuesday, September 7, 2022
11                                  11:00 a.m.
12
    Before:  THE HONORABLE NELSON S. ROMÁN,
13                          District Judge
14
15  A P P E A R A N C E S:
16
    DAMIAN WILLIAMS
17      United States Attorney for the
        Southern District of New York
18  JAMES A. LIGTENBERG,
    JAMIE E. BAGLIEBTER,
19      Assistant United States Attorneys
20  FASULO, BRAVERMAN & DiMAGGIO, LLP
    SAMUEL M. BRAVERMAN,
21      Attorney for Defendant
22
23
24
25
```

1       THE DEPUTY CLERK:  This is a proceeding in criminal

2 matter 19 cr 497, Defendant No. 4, the United States of America

3 v. Jacob Rosner.

4       Counsel, please state your appearances for the record.

5       MS. BAGLIEBTER:  Good morning, your Honor.  Jamie

6 Bagliebter for the Government, and with me at counsel's table

7 are AUSAs Jim Ligtenberg and Sam Adelsberg.

8       THE COURT:  Good morning, everyone.

9       MR. BRAVERMAN:  Good morning, your Honor.  Sam

10 Braverman for Mr. Jacob Rosner who sits immediately to my right,

11 and, Judge, in the audience here, we're joined by members of my

12 client's family, and this is the family where he's currently

13 residing, his aunt and his uncle.  And the members of that

14 congregation up there, the rabbi and other fellow elders in that

15 community, have come to join us today as well.

16       THE COURT:  All right, good morning.

17       All right, this a proceeding in the matter of United

18 States v. Jacob Rosner, Docket No. 19 cr 497, Defendant No. 4.

19 It is intended to be the sentencing of the defendant.  I note

20 for the record that the defendant Jacob Rosner is present in the

21 courtroom and is seated next to counsel.

22       I have reviewed the pre-sentence investigation report

23 filed July 12th, 2022, which was prepared in connection with

24 today's sentencing of Mr. Rosner; the defendant's submission

25 dated August 24th, 2022; and the Government's submission dated

1 August 31st, 2022.

2          Has the Government reviewed the pre-sentence report

3 and does the Government have any objections to the pre-sentence

4 report?

5          MS. BAGLIEBTER:  The Government has reviewed and it

6 has no objections, your Honor.

7          THE COURT:  Mr. Braverman, did you have an opportunity

8 to review the pre-sentence report?

9          MR. BRAVERMAN:  I did, your Honor.  I provided a copy

10 of it to my client, he had time and opportunity to review it, I

11 answered his questions; we have no objections to the report.

12          THE COURT:  Okay, thank you.

13          Mr. Rosner, did you have an opportunity to read and

14 review the pre-sentence report?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right, you have to speak into the

17 microphone.

18          THE DEFENDANT:  Yes, I did.

19          THE COURT:  All right, and did you have an opportunity

20 to discuss it with your attorney?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right, and did you discuss any

23 potential objections with respect to the report with your

24 attorney?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Okay.

2          Mr. Rosner, the S3 superseding indictment, ECF no.

3  358, filed September 28th, 2021, charges you with Count Three,

4  which reads as follows:

5          From at least December 5th, 2018, up to and including

6  March 16, 2021, you conspired with others to commit

7  international parental kidnapping, in violation of Title 18

8  U.S.C. § 1024; unlawful transfer, possession, and use of a means

9  of identification, in violation of Title 18 U.S.C. § 1028(a)(7);

10  and entry by false pretenses to a secured area of any airport,

11  in violation of Title 18 U.S.C. § 1036, all in violation of

12  Title 18 U.S.C. § 371.

13          Count Four of the same indictment charges that from at

14  least December 5, 2018, up to and including December 27, 2018,

15  removing and retaining Minor 1 outside the United States and

16  away from her mother who was lawfully in custody of Minor 1 and

17  aiding and abetting the same, in violation of Title 18 U.S.C.

18  § 1204(a) and 2.

19          And Count Five reads as follows: from at least

20  December 8, 2018, up to and including December 27, 2018,

21  removing and retaining Minor 2 outside the United States and

22  away from his mother who was lawfully in custody of Minor 2 and

23  aiding and abetting the same, in violation of Title 18 U.S.C. §

24  1204(a) and 2.

25          On April 25th, 2022, the defendant, Jacob Rosner,

1 entered a guilty plea to Count Three of the superseding

2 indictment, that is, S3.  That plea was taken before this Court.

3          Does the Government have any comments or motions for

4 the Court's consideration before I impose the sentence upon the

5 defendant?

6          MS. BAGLIEBTER:  Yes, your Honor.  The Government will

7 be very brief as our position is fully set forth in our

8 sentencing submission.

9          In short, a sentence here within the guidelines range

10 and, more specifically, between time served and the high end of

11 the guidelines, which is 41 months, is appropriate.  The most

12 significant of the § 3553(a) factors here is the nature and

13 circumstances of the offense.

14          The Court has now presided over two trials in this

15 case and you are fully familiar with the facts, I don't need to

16 belabor them here, they're also in our submissions, but this is

17 a very serious offense, there were real victims, real harm, and

18 the defendant's role in the offense was significant, and so

19 given the nature and circumstances of the offense, as well as

20 the other § 3553(a) factors, a guideline sentence is

21 appropriate.

22          And as we've noted in our submission, the Government

23 does acknowledge some of the mitigating factors with respect to

24 this defendant.

25          Most significantly, this defendant has accepted

1  responsibility and is pleading guilty and, of course, that is

2  factored already into the guidelines and that is what's

3  resulting in the guidelines range that he has as he's received

4  the three-point reduction, but the defendant also was a young

5  man at the time the offense was committed and was under -- was a

6  member of a community where he faced some pressure to engage in

7  the actions here and that can be considered as part of the

8  history and characteristics of this defendant.

9          And so for those reasons, the Government views the

10  guidelines range here as the right outcome, so a sentence

11  between time served and the high end of the guidelines.

12          THE COURT:  All right, thank you, counsel.

13          Before we continue, I'm going to ask everyone to

14  kindly wear their mask properly, even those in the audience.  It

15  goes over your nose, all right, and the reason for that is to

16  protect you as well as protect everyone else in the courtroom,

17  all right?  We're still not over the COVID pandemic, all right.

18  Things have been lax somewhat, but people are still getting

19  sick, and I for one don't want to get sick, nor do I wish to get

20  anyone else sick, all right, because of my carelessness.

21          All right, Mr. Braverman, do you have any comments

22  you'd like to make on behalf of your client before I impose the

23  sentence on him?

24          MR. BRAVERMAN:  I do, your Honor.  There are a couple

25  comments that I'd like to make and I address them, in part, in

1  my sentencing memorandum, which I know the Court has had a

2  chance to look at, as well as letters of support that I've

3  submitted.

4          The conduct of this case, of course, was serious.

5  There's just simply no doubt about that, it was serious conduct,

6  and the Government took an appropriate step to charge people

7  with offenses.  Even though it was 38 months into the case, Mr.

8  Rosner was, I believe, the first of all the charged defendants

9  to plead guilty other than people who had cooperated.

10         Now, one of the things that really made a difference

11 was that Mr. Rosner, Jacob Rosner, was separated and went to a

12 different jail.  In a different jail, he sat there by himself,

13 and at that point, things started to change.  He was given a

14 plea offer after he had served 38 months, the Government and the

15 defense agreed on a bail package and he was released and he was

16 released into the custody of his uncle and his aunt who are here

17 today, and that led him on a real path of change.  And Pre-Trial

18 Services, who I've spoken to repeatedly about this, Mr. Leo

19 Berrios, has praised Mr. Rosner for making a change.

20         We all talk about how it's an essential part of our

21 everyday existence to change the circumstances and we rely on

22 the tools of our life to make those changes, and as I describe

23 in my sentencing memo and as Probation has described in great

24 detail in their report, Mr. Rosner, Jacob Rosner, did not have

25 those tools, it was just not part of his growing-up existence to

1 have the tools, to enforce change on his environment.  But he

2 did it.

3          The Court maybe came across this once before, but the

4 Court is, I'm sure, aware of motivational posters.  You see them

5 in lots of places.  In the MCC, there used to be a poster.  That

6 poster said that courage is not often the loud voice that yells

7 to make sure everybody hears it.  Sometimes it's the quiet voice

8 that at the end of the day says, "tomorrow, I will do better."

9 I remember this poster, because I see it all the time when I'm

10 down there, and I'm always asking myself how can I motivate a

11 client of mine to change and have a better existence than the

12 MCC, and I've concluded after thirty years of doing this that I

13 have precious little input on that, as hard as I may try, that

14 if they come self-motivated to make a change, they can do it,

15 and without it, it's almost sometimes impossible to make that

16 happen.  So I laud Mr. Jacob Rosner for making a change.

17          He has worked hard with the family that he is living

18 with, his family, but not the family that he grew up with;

19 worked hard to be a member of that family, to do the work that

20 requires him of somebody living in the house, now he's learning

21 a skill as a scribe from his uncle; and he's learning to --

22 actually, his permissions have been expanded to allow him to

23 travel within the community to go to -- not only just to

24 religious obligations, but to actually go do little things like

25 shopping for food and other skills that he's going to need to

1  develop that he's never had.  And he's done well at it.

2          He's certainly old enough to be my son and I would

3  just say on the record here, I'm very proud of the changes that

4  he's made, it's really been impressive to watch, and I

5  appreciate the Court giving him that opportunity.  When he

6  proved himself at each step, the Court was willing to say we'll

7  expand that room a little bit larger so you can continue to

8  develop.  I've had a chance to speak with his uncle if not every

9  week of the trial, certainly -- in the case, certainly sometimes

10  twice and three times a week and again this morning, just to say

11  I'm checking in, where are we, what's going to happen today.

12  For those reasons, your Honor, I really do think that time

13  served is a fair and appropriate sentence.

14          For the nature of the offense, jail is appropriate.  I

15  don't dispute that at all.  And certainly if it were my child, I

16  would be beside myself, as, I'm sure, the mother of the children

17  was.  The nature and history of this young man sitting to my

18  right, though he was a member of the community that organized

19  this, was never a leader of that community, as we know, as the

20  trial evidence that I read amply explored.

21          We know that he's never been in trouble with the law

22  before.  We know that unlike some others who may have taken

23  their rest only as a chance to double down their bet, Mr. Rosner

24  didn't participate in any second conspiracies.  We know that Mr.

25  Rosner, when he was given the opportunity, expressed remorse for

1  it and said it to the Court, and I've seen what he's prepared to

2  speak to here today and addresses it again.  And fortunately, it

3  also talks in empathetic terms about other people.  It's not

4  just that he's sad for himself, but he apologized to other

5  people for the pain he caused them.  That's the words he wrote

6  down that the Court will hear in a moment.  And empathy, of

7  course, is an essential aspect of otherwise getting along with

8  other people.  If you can't think of them as important, then

9  you'll never respect their rights, and he talks about that in

10  his statement.

11          I also think that it does promote respect for the law,

12  it provides deterrence to Mr. Rosner as he has been deterred and

13  his behavior has changed, and also, I think it will provide

14  general deterrence to society, but most importantly, I think the

15  reason why 38 months is sufficient and no greater than necessary

16  is that what will it profit us as a society to put Mr. Rosner

17  back in even for another day, because the very thing we want him

18  to do he is doing outside of the jail.

19          If the Court were to say that top of the guidelines,

20  41 months, was essential and literally nothing less would serve

21  the purposes of 3553(a), Mr. Rosner would still be released from

22  the jail because with the credit for good time, he would get --

23  on a 41-month sentence, he'd get approximately six months and a

24  week of good-time credit, which would mean that he'd have to

25  serve approximately 35 months or 34 months and three-and-a-half

1  weeks, and he's already served 38.  But while he waited for his

2  time to be calculated, he'd be held in quarantine at the jail

3  because he's be an outsider coming into the jail and he might

4  spend two weeks waiting for that calculation to come in that

5  would say he needs to be released and he would serve it in

6  isolation, whereas what he's doing now is, I think, what the

7  Court would ask, may demand, of anybody sentenced by this Court,

8  you must abide by the rules of society, you must abide by the

9  rules of your supervision, you must care and respect for others,

10 you must do what you need to do to be a productive citizen.  And

11 Mr. Rosner, fortunately, on his own, is doing all those things,

12 and fortunately he has a great support network sitting behind me

13 here today, plus the eleven children in the household who I've

14 gone up to that house and met, and they're beautiful children

15 and they come up to him when I see him and they give him a huge

16 hug, as they've all taken him into their family.

17        I think from the Court's perspective, the Court could

18 say that is promoting respect for the law, and I think the Court

19 could in very good conscience decide that this young man does

20 not have to pay for all the sins of his father.

21        I'm not here to make anybody else's sentencing or case

22 harder, that's not my purpose, but my purpose is to make sure

23 that this young man who sits to my immediate right is seen to be

24 him and what he does and what he's up to, and I know the Court

25 does that because I've been at sentencings before this Court

1  many times and I know this Court takes it extremely seriously,

2  and I'm pleased for that because that means I know the Court has

3  read those letters and thought about those things.

4         So for those reasons, your Honor, I really do believe

5  that time served, which in this case is three years and two

6  months that the defendant served in prison, is sufficient, but

7  no greater than necessary to effect all the purposes of the

8  3553(a), and I thank the Court.

9         THE COURT:  Thank you, Mr. Braverman.

10         Mr. Rosner, is there anything you'd like to say on

11  your own behalf before the Court imposes the sentence upon you?

12         THE DEFENDANT:  Yes.

13         I accept responsibility for the actions I took.  I

14  understand that it was wrong and a crime.  I regret having hurt

15  all the people involved.  I am ashamed of my past behavior of

16  violating the law.  I am not the same person that I was then

17  when I was arrested in 2018.  I have learned many lessons,

18  including to always abide by the law.  I've also learned to

19  evaluate every situation carefully before making a decision and

20  not to rely on others to make decisions for me.  I hope to be

21  given the opportunity to correct what I have wronged, be a

22  productive member of society, and do only good unto others.

23         I would like to thank my aunt and uncle who took me

24  into their home and showed me real love.

25         Thank you.

1          THE COURT:  All right, thank you, Mr. Rosner.

2          In accordance with the decision by the Supreme Court

3    in *United States v. Booker*, while the United States sentencing

4    guidelines are not mandatory, this Court nonetheless must

5    consult those guidelines and take them into account when

6    sentencing.  Therefore, this Court has considered the findings

7    of facts stated in the pre-sentence report, as well as the

8    guidelines analysis and recommendations contained therein.  The

9    Court has weighed this information, along with the factors

10   listed in 18 U.S.C. § 3553(a), in coming to its final sentencing

11   decision.

12         The Court adopts the factual recitation in the

13   pre-sentence investigation report.  The pre-sentence

14   investigation report includes a computation that Mr. Rosner's

15   offense level amounts to 20 and his criminal history falls into

16   category 1.  The guidelines sentence for the offense level and

17   criminal history category listed in the pre-sentence report is

18   33 to 41 months imprisonment.  Count Three has a guidelines

19   range of 1 to 3 years of supervised release.  In addition, the

20   applicable fine range is $15,000 to $150,000.

21         Mr. Rosner, you have been found guilty of Count Three

22   of the S3 superseding indictment which alleges from at least

23   December 18 -- I'm sorry, December 5th, 2018, up to and

24   including March 16, 2021, you conspired with others to commit

25   international parental kidnapping, in violation of Title 18

1  U.S.C. § 1204; unlawful transfer, possession, and use of a means

2  of identification, in violation of Title 18 U.S.C. § 1028(a)(7);

3  and entry by false pretenses to any secure area of any airport

4  in violation of Title 18 U.S.C. § 1036, all in violation of

5  Title 18 U.S.C. § 371.

6          The Probation Office has recommended that the Court

7  impose a sentence of 38 months of incarceration, followed by one

8  year of supervised release.  The Probation Office notes that for

9  this offense to which you have pled guilty, you must pay a

10  special assessment of $100 in accordance 18 U.S.C. § 3013.  The

11  Probation Office has recommended that no fine be imposed.  The

12  Government has also stated that it is not seeking restitution.

13          Sub-section (a)(1) of 18 U.S.C. § 3553 requires that

14  courts take into consideration the nature and circumstances of

15  the offense and the history and characteristics of the

16  defendant.  Subsection (a)(2) of 18 U.S.C. § 3553 requires that

17  the Court consider the need for the sentence to promote certain

18  objectives of the criminal justice system, namely punishment,

19  specific and general deterrence, and rehabilitation.  The Court

20  must also consider the kinds of sentences available, the

21  sentencing guidelines, pertinent policy statements, the need to

22  avoid unwanted sentencing disparities, and the need to provide

23  restitution to victims.

24          I have considered the arguments made by both sides and

25  the information provided by the parties, including Mr. Rosner's

1  acceptance of responsibility for his actions, the nature and

2  circumstances of the crime, his prior criminal history, his

3  history and characteristics, and the seriousness of his crime.

4  Taking into account the nature and the circumstances of the

5  offense and the history and characteristics of the defendant and

6  considering all the factors listed in 18 U.S.C. § 3553(a), the

7  Court finds that a sentence of 38 months imprisonment, or

8  basically time served, to be followed by two years of supervised

9  release is reasonable and appropriate and that such term is

10 sufficient, but not greater than necessary to promote the proper

11 objectives of sentencing.

12         In addition, the defendant is ordered to pay to the

13 United States a mandatory special assessment of $100, which

14 shall be due immediately.

15         Finally, based on the pre-sentence report's

16 recommendation, I will not impose a fine.

17         Mr. Rosner, upon your release from custody, you shall

18 be placed on supervised release for a period of two years.

19 During your term of supervised release, you must comply with the

20 mandatory conditions of supervision as detailed on page 29 of

21 the pre-sentence report and the standard conditions of

22 supervision as detailed on pages 29 and 30 of the pre-sentence

23 report.

24         In addition, Mr. Rosner, you must obey the following

25 special conditions while on supervised release as detailed on

1 page 31 of the pre-sentence report.

2          Mr. Rosner, do you understand each and every one of

3 these conditions?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Upon --

6          MS. BAGLIEBTER:  Excuse me, your Honor.  My apologies

7 for interrupting.

8          I do believe, and after speaking with Mr. Braverman,

9 with respect to the special conditions on page 31, the

10 Government has, has one -- would like to raise something with

11 the Court.

12          THE COURT:  Okay.

13          MS. BAGLIEBTER:  The second condition states that the

14 defendant cannot directly or indirectly associate or have

15 contact with any individual currently or formerly associated

16 with Lev Tahor unless approved by the U.S. Probation Office.

17 This was not a condition that was in the special conditions for

18 his co-defendants who have previously been sentenced, Nachman

19 Helbrans and Mayer Rosner, and the Government would ask -- would

20 argue that it's not needed here and it should be struck.

21          THE COURT:  I'm sorry, this is the special conditions

22 --

23          MS. BAGLIEBTER:  On page 31.  It's the second special

24 condition.

25          THE COURT:  So the Government has no objections to the

1  removal of that.  Okay.

2          MS. BAGLIEBTER:  That's correct.

3          THE COURT:  All right, so the special conditions will

4  be modified as just indicated on the record --

5          MR. BRAVERMAN:  Judge, I just have one follow-up to

6  that as well...

7          THE COURT:  Yes.

8          MR. BRAVERMAN:  One of the people who was a former

9  member of the Lev Tahor community is the Minor 1, also known as

10 Jane Doe at the trial, and one of the things that I included in

11 my sentencing memorandum was a letter from Jane Doe and that was

12 filed separately, but -- and specifically on that, she indicated

13 in that letter that she wished to see the person that she

14 believed to be her husband.  She has, in fact, turned 18 today.

15         THE COURT:  I understand that, but that is no longer

16 applicable, so I'm not quite sure where we're going with this.

17         MR. BRAVERMAN:  So what Probation had asked, that one

18 of the conditions that he have no contact with her -- they

19 mention that specifically, that he have no contact with her and

20 she's expressed having contact with him, and I'd like to have

21 that condition, they mention that on page 28...

22         MS. BAGLIEBTER:  Your Honor, I believe also you could

23 -- it's just on page 31 where I had noted.  I was pointing out

24 the second paragraph and I believe Mr. Braverman is asking for

25 the first paragraph to also be struck.

1          THE COURT:  Does the Government have any objections to

2  striking the first paragraph as well?

3          MS. BAGLIEBTER:  The Government will just take no

4  position on whether the first paragraph is struck.

5          THE COURT:  Can you show me the correspondence where

6  she indicates as much, Mr. Braverman?

7          MR. BRAVERMAN:  Yes, your Honor.  In the letters that

8  I submitted to the Court, one of the letters was penned by her,

9  and she is represented by counsel and counsel's the one who

10  forwarded that letter to me.  In fact, I spoke with counsel for

11  Minor 1, I'm sorry, now, I guess, Jane Doe the adult --

12          THE COURT:  Can you bring that up, Pablo?

13          MR. BRAVERMAN:  I spoke with her yesterday afternoon,

14  counsel, and counsel informed me that it was still her client's

15  position that she wanted to be able to see Jacob Rosner on a

16  regular basis.  In fact, the letter even talks about cohabiting

17  with him, but certainly she wants to see him.  She expresses

18  that directly in the letter.

19          MS. BAGLIEBTER:  And, Judge, so that the Court has all

20  the information, Jane Doe's lawyer has also communicated to the

21  Government that they would prefer to not have that special

22  condition as well.

23          THE COURT:  All right, so we'll strike the first

24  paragraph and the second paragraph of the special conditions.

25          MR. BRAVERMAN:  Thank you, sir.

1              THE COURT:  All right.

2              After modifying the special conditions, Mr. Rosner,

3   all right, do you understand each and every one of the

4   conditions you must meet with respect to your term of supervised

5   release?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Okay, upon your release from custody, you

8   shall report to the nearest probation office within 72 hours.

9   The sentence as stated is imposed.

10             Mr. Rosner, you have the right to appeal your

11  sentence.  Any notice of appeal must be filed within 14 days

12  after the entry of judgment, so if you wish to appeal, you must

13  advise your attorney to prepare and file a notice of appeal

14  immediately.  If you're unable to pay the costs of an appeal,

15  you have the right to apply for leave to file *in forma pauperis,*

16  meaning as a poor person.  If you make such a request, the clerk

17  of the court must immediately prepare and file a notice on your

18  behalf.

19             Do you understand your right to appeal to the extent

20  it may exist?

21             THE DEFENDANT:  Yes.

22             THE COURT:  All right, any remaining counts that need

23  to be either addressed or dismissed at this time?

24             MS. BAGLIEBTER:  Yes, your Honor, the Government moves

25  to dismiss all open counts in this indictment and the underlying

1  indictments.

2          THE COURT:  As it applies only to Jacob Rosner,

3  correct?

4          MS. BAGLIEBTER:  That's correct, your Honor.

5          THE COURT:  Any objection?

6          MR. BRAVERMAN:  No, sir.

7          THE COURT:  That application is granted.

8          Anything else?

9          MR. BRAVERMAN:  Just one last thing, your Honor.

10         I believe, and the marshals can correct me on this,

11  but they're not here, it's my understanding if the Court on the

12  judgment terms a time period like 38 months --

13         THE COURT:  It's going to be time served --

14         MR. BRAVERMAN:  Perfect.

15         THE COURT:  -- parentheses 38 months...

16         MR. BRAVERMAN:  Perfect.  Very good, Judge.  Thank you

17  very much.

18         THE COURT:  All right, so the judgment will reflect

19  time served, parentheses, 38 months, so that there is no

20  question as to whether or not he has to go back and fulfill any

21  additional time or anything like that.

22         MR. BRAVERMAN:  Thank you, Judge.  I appreciate it.

23         THE COURT:  All right?

24         Mr. Rosner, it's my sincere hope that you never have

25  to appear before me or any other judge again.  Take this as an

1 opportunity to start a new life.  I know that you're a religious

2 man.  Sometimes it's important that we pray and we pray hard for

3 guidance, all right, so that we make wise decisions.  Always

4 search for wisdom, all right, and make decisions on your own.

5 All right?  Don't be influenced by others.  It's okay to listen

6 to other people, but ultimately, you know, you're a man, you

7 have to make independent choices, and even as a judge, I always

8 seek, you know, guidance from above.  There's nothing wrong with

9 that.  I pray a great deal.

10              All right, stay humble and good luck.

11              THE DEFENDANT:  Thank you.

12              THE DEPUTY CLERK:  Court's in recess.  Thank you,

13 everyone.

14              Certified to be a true and accurate transcript.

15 

16              _____

17              TABITHA DENTE, RPR, RMR, CRR

18              OFFICIAL COURT REPORTER

19

20

21

22

23

24

25